UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LING ZHOU (A-200-107-360),

Petitioner,

v.

WARDEN OF THE CALIFORNIA CITY IMMIGRATION PROCESSING CENTER,

Respondent.

No. 1:26-cv-5774 DC CSK

FINDINGS & RECOMMENDATIONS

Petitioner Ling Zhou (A-200-107-360), a citizen and native of China, was admitted to the United States on or around January 15, 2011 on a student visa. On or around March 31, 2026, U.S. Immigration and Customs Enforcement ("ICE") detained petitioner. Petitioner, proceeding pro se, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] This habeas action concerns petitioner's detention. For the reasons that follow, the Court recommends that respondent's motion to dismiss be denied, the petition be granted as to claim four and petitioner be immediately released.

///

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

## I. FACTUAL BACKGROUND[2]

Petitioner is a national and citizen of China.[3] (ECF No. 7-1 at 1.) Petitioner was admitted to the United States on or around January 15, 2011 on a student visa. (ECF No. 7-1 at 2; ECF No. 8 at 1; see also Ling v. Chestnut, et al., Case No. 1:26-cv-3169 DC CSK (E.D. Cal.) (ECF No. 5-1 at 1) (Department of Homeland Security entry document).[4]) The visa was issued on October 22, 2010 and expired on October 20, 2011. (See Ling v. Chestnut, Case No. 1:26-cv-3169 (ECF No. 1-1 at 3).)

On March 31, 2026, ICE officers assigned to Camp Pendleton were contacted by a military police officer and advised that the officer had a foreign born individual in custody. (ECF No. 7-1 at 2.) Petitioner and her husband were delivering for Amazon at this military base. (ECF No. 1 at 6.) Petitioner and her husband had delivered Amazon packages to the base a couple of times before. (Id. at 9.) The ICE officers responded to the main gate. (ECF No. 7-1 at 2.) They asked petitioner if she had any identification. (Id. at 2-3.) Petitioner produced a Social Security card. (Id. at 3.) Records indicated that petitioner was not a citizen of the United States and did not possess any documents that would allow her to remain in the United States. (Id.) The ICE officers conducted an at-large field arrest of petitioner. (Id. at 2.) Petitioner has no criminal history. (Id. at 3.)

Petitioner does not have a final order of removal. On March 6, 2020, an immigration judge ordered petitioner removed. (Id.) On March 20, 2020, petitioner filed an appeal from this order with the Board of Immigration Appeals ("BIA"). (Id.) At the time petitioner filed her petition for writ of habeas corpus, this BIA appeal was pending. (ECF No. 1 at 5.) In petitioner's reply, petitioner indicates that the BIA decided her appeal because she has now filed an appeal to

---

[2] Respondent does not dispute the factual information alleged by petitioner in the petition and reply.

[3] The Form I-213 incorrectly states that petitioner is a citizen and national of Senegal. (ECF No. 7-1 at 3.) The Form I-213 also incorrectly refers to petitioner, who is female, as "him." (Id.)

[4] This action is related to a previous action filed on petitioner's behalf by counsel, Ling v. Chestnut, et al., Case No. 1:26-cv-3169 DC CSK (E.D. Cal.), and this Court takes judicial notice of the records filed in Ling v. Chestnut. See Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2011).

the Ninth Circuit Court of Appeals. (ECF No. 8 at 2.)

## II. PROCEDURAL BACKGROUND

On July 24, 2026, petitioner filed the petition for writ of habeas corpus. (ECF No. 1.) On August 6, 2026, respondent filed a timely motion to dismiss. (ECF No. 7.) On August 21, 2026, petitioner filed a response to the motion to dismiss. (ECF No. 8.) Briefing is now complete.

This action is related to a previous action filed on petitioner's behalf by counsel, Ling v. Chestnut, Case No. 1:26-cv-3169 DC CSK (E.D. Cal.). (ECF No. 4.) On June 15, 2026, Ling v. Chestnut, was dismissed for failure to prosecute. Case No. 1:26-cv-3169 DC CSK (ECF No. 8).

## III. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

Habeas corpus petitions are subject to summary dismissal pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Court. The provisions of Rule 4, which are applicable to a petition filed pursuant to 28 U.S.C. § 2241, provide in pertinent part: "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must not dismiss the petition and direct the clerk to notify the petitioner." The Advisory Committee Notes to Rule 4 indicate that the court may dismiss a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to respondent's motion to dismiss, or after an answer to the petition has been filed.

///

**IV. DISCUSSION**

The petition raises four claims for relief. (ECF No. 1 at 6-7.) In claim one, petitioner claims that ICE did not show her any order or evidence when they arrested her. (Id. at 6.) In claim two, petitioner challenges ICE's claims that she and her husband intentionally made a wrong turn into the military base, but that is not true. (Id.) In claim three, petitioner claims that ICE said that she is in the country illegally, but her appeal of the order of removal has been pending for six years. (Id.) In claim four, petitioner claims that she has been detained for 3.5 months. (Id. at 7.) Because petitioner is proceeding pro se and pro se pleadings are construed liberally, this Court construes claim four to raise a due process claim under the Fifth Amendment challenging petitioner's detention, and not limited to a claim challenging the detention as prolonged. In the motion to dismiss, respondent argues that the petition should be dismissed because petitioner, who is detained pursuant to 8 U.S.C.§ 1226(a), failed to show that her detention is unlawful or unconstitutional and failed to exhaust administrative remedies as to her custody status. (ECF No. 7 at 2-4.)

**A. Due Process Claim (Claim Four)**

In claim four, petitioner argues that she was detained in violation of her right to due process. Respondent does not address the merits of this claim in the motion to dismiss. (See ECF No. 7.)

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps: the first asks whether

there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

Here, petitioner has a protected liberty interest in remaining out of custody where she was allowed to live in the United States for over 14 years after her visa expired. During that time, petitioner obtained a work permit and a Social Security card. (ECF No. 7-1 at 3; ECF No. 8 at 1-2.) Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration

detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For over 14 years after her visa expired, petitioner was free from immigration detention before her March 31, 2026 detention. Petitioner obtained a work permit and a Social Security card. (ECF No. 7-1 at 3; ECF No. 8 at 1-2.) The over 14 year duration of her freedom from immigration detention elevates and underscores her interest in liberty. See Pinchi v. Noem, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. July 24, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty.").

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondent does not contend that petitioner is or was a flight risk or a danger to the community. (See generally ECF No. 7.) In addition, respondent does not contend that petitioner has a criminal history. (See id.) Here, petitioner has been detained for over five months without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. No neutral arbiter has determined whether petitioner is a flight risk or a danger to the community.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondent's interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 19, 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before she was detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). Respondent points to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036.

This Court further observes that courts have found protected liberty interests where the government knew of the noncitizen's continued presence in the United States and yet took no action to detain the noncitizen for months or years after their visa expired. See Huang v. Blanche, No. 2:26-cv-02157-BAT, 2026 WL 2271901, at *1, 4 (W.D. Wash. July 15, 2026) (finding liberty interest where the noncitizen overstayed a tourist visa and applied for asylum, but was not arrested by ICE until over ten years after visa expired); Benipal v. Rokosky, No. 26-cv-01306-RM-CDB, 2026 WL 1355010, at *1, 10 (D. Ariz. Apr. 24, 2026), findings and recommendations adopted, 2026 WL 1352061 (D. Ariz. May 14, 2026) (finding that noncitizen who had overstayed his visa had a liberty interest in release where he had not been detained for years after his visa had expired, even though in that time he had been issued a deficient notice to appear, been granted permission to work in the United States, and filed an application to register permanent residence or adjust status); Kalkan v. Chestnut, No. 26-cv-02028-DAD-EFB, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026), appeal dismissed sub nom Kalkan v. Chestnut, No. 26-3277, 2026 WL 2446315 (9th Cir. June 18, 2026) (petitioner with expired visa and pending asylum application

had protected liberty interest where immigration officials did not promptly detain petitioner based on expiration of that status); Kharitonova v. Albarran, No. 26-cv-01362-JSC, 2026 WL 531441, at *1-2 (N.D. Cal. Feb. 25, 2026) ("Petitioner [with expired visa] has a vested liberty interest in remaining free from detention as she has lived for the last 13 years. ... The government's decision not to detain Petitioner 'when it processed her asylum application, took her biometrics, referred her asylum case to EOIR, and advised her to appear for multiple hearings over a period of years,' likewise gave rise to 'a liberty interest on Petitioner's part that she would remain free unless she violated her conditions of release.' ... The government's insistence Petitioner lacks a liberty interest because it never before sought to detain her is specious. ... Although the government did not detain and then release her, it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained."). Here, the government knew of petitioner's continued presence in the United States following the expiration of her visa, as she was issued a work permit and a Social Security card, yet took no action to detain petitioner for over 14 years after her visa expired. The government also allowed petitioner to remain out of custody during almost the entire six years her BIA appeal was pending, Accordingly, the Court finds that petitioner is entitled to relief on her due process claim.

**B. Exhaustion**

Respondent argues that petitioner failed to exhaust her administrative remedy. (ECF No. 7 at 2-4.) 28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." Laing v. Ashcroft, 370 F.3d 994, 997 (9th Cir. 2004). However, "[a]s a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). Because exhaustion is not required by statute, it is not jurisdictional. Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), overruled on other grounds by Reno v. Koray, 515 U.S. 50, 54-55 (1995) (citing Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc., 811 F.2d 1209, 1223 (9th Cir. 1987)). If a petitioner has not properly exhausted her claims, the district court, in its discretion, may "determine whether to excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his [or her] administrative remedies before

proceeding in court." Id. "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (internal citation and quotation marks omitted). However, the court may waive the exhaustion requirement when administrative remedies are inadequate, irreparable injury may occur without immediate judicial relief, or exhaustion otherwise would be futile. Laing, 370 F.3d at 1000-01 ("[D]istrict court's habeas jurisdiction under 28 U.S.C. § 2241 is ordinarily reserved for instances in which no other judicial remedy is available.").

Given that petitioner was allowed to remain free from immigration detention for over 14 years after the expiration of her visa, was issued a work permit and Social Security card, and has no criminal record, this Court finds that petitioner may suffer irreparable injury without immediate judicial relief. The Court concludes that the prudential exhaustion requirement should be waived.

### C. Remaining Claims

This Court declines to reach petitioner's remaining claims because petitioner is entitled to relief as to claim four. See N.K. v. Noem, No. 1:26-cv-0292 KES SAB, 2026 WL 130345, at *1 (E.D. Cal. Jan. 16, 2026) (granting habeas petition as to the second count of the petition and not addressing other counts because the petitioner was entitled to the relief sought based on the court's ruling as to that second count); Constantinovici v. Bondi, No. 3:25-cv-2405 RBM AHG, 2025 WL 2898985, at *7 (S.D. Cal. Oct. 10, 2025) (granting habeas petition based on due process claim and "declin[ing] to address the remaining grounds in the Petition for seeking release").

## V. CONCLUSION

In summary, the Court recommends that respondent's motion to dismiss be denied, and the petition for writ of habeas corpus be granted as to claim four.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED as to claim four.

2. Respondent's motion to dismiss (ECF No. 7) be DENIED.
3. Respondent be ordered to IMMEDIATELY release petitioner Ling Zhou (A-200-107-360) and be ordered to provide petitioner with a copy of the release order at or near the time of release. If respondent has custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondent shall return those to petitioner at the time of release.
4. Respondent be ENJOINED AND RESTRAINED from re-detaining petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that physical custody is legally justified. This injunction does not address other circumstances where detention authority is established under different authority than what is presented in this case (e.g., 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231).
5. Given petitioner's pro se status, respondent be directed to file, within seven days of the adoption of these findings and recommendations, a status report addressing petitioner's status.
6. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven (7) days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven (7) days** after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 10, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Zhou5774.157.imm.RELEASE/2